UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――

ZURICH AMERICAN INSURANCE
COMPANY and AMERICAN ZURICH
INSURANCE COMPANY,

                       Plaintiffs,

-v-

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON
SUBSCRIBING TO POLICY NUMBER
B12630308616 and ARCH INSURANCE
COMPANY,

                       Defendants.

21-CV-6755 (JPO)

OPINION AND ORDER

―――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

      Plaintiffs Zurich American Insurance Company ("Zurich American") and American Zurich Insurance Company ("American Zurich" and collectively, "Zurich") filed suit against Defendants Certain Underwriters at Lloyd's of London Subscribing to Policy Number B12630308616 ("Lloyd's") and Arch Insurance Company ("Arch") over an insurance coverage dispute arising from a personal injury lawsuit. Now before the Court is Zurich's motion for summary judgment against Lloyd's seeking a declaration that the anti-subrogation rule precludes Lloyd's from commencing a claim for common law indemnification or contribution against Skanska-Walsh Joint Venture ("Skanska"). For the reasons that follow, Zurich's motion is granted.

1

I.   **Background**[1]

The Port Authority of New York and New Jersey ("Port Authority") operates LaGuardia Airport and hired LaGuardia Gateway Partners LLC ("LGA") as the developer of a construction project at LaGuardia ("LGA Project").  (*See* Dkt. No. 34 ¶¶ 1–2.)

In April 2017, LGA entered into a sub-contract with Skanska (the "Contract") to perform work on the LGA Project.  (*See* Dkt. No. 34 ¶ 3.)  Section 20.1 of the Contract requires LGA to procure a commercial general liability policy, under which Skanska would be the first named insured and LGA would be a named insured.  (*See* Dkt. No. 35-1 at 221.)  In relevant part, Section 21.1A requires Skanska to "indemnify, defend and hold harmless [LGA] for any losses suffered or costs incurred by [LGA] . . . to the extent caused by . . . any third-party claims for bodily injury . . . arising out of (1) [Skanska's] negligent performance . . . or (2) any breach of [the Contract] by any [Skanska] party or any breach thereof by [LGA] directly caused by the acts or omissions of any [Skanska] party."  (Dkt. No. 35-1 at 234.)[2]  The Contract contains a similar clause requiring Skanska to indemnify Port Authority for its losses.  (*See* Dkt. No. 34 ¶ 7.)

The Contract also includes Section 21.4, which states in part:

> (a) For purposes of this Article 21, the amount of any Losses for which indemnification is provided under Article 21 shall be reduced by any amounts actually recovered by the indemnified party under insurance policies with respect to such Losses, it being understood that the obligations of the indemnifying party hereunder shall not be so reduced to the extent that any such recovery results in an increase in the indemnified party's insurance premiums, or results in any other additional cost or expense to any such indemnified party.

(Dkt. No. 35-1 at 236.)

---

[1] The facts set forth in this section are undisputed.

[2] The parties agree that, under Section 11 of the Workers' Compensation Law, Skanska could not be named as a main-party defendant in the underlying case here.  (*See, e.g.*, Dkt. No. 46 at 15.)

Skanska and LGA obtained a Contractors Controlled Insurance Program ("CCIP") for the LGA Project, which afforded $300 million in commercial general liability insurance coverage to Skanska, LGA, and Port Authority. (*See* Dkt. No. 34 ¶¶ 9–10.) Zurich American issued the primary commercial general liability policy in the CCIP tower with a $5 million limit ("Zurich American Policy"), Arch issued the first layer excess policy with a $5 million limit ("Arch Policy"), and Lloyd's issued a second layer excess policy with a $20 million limit ("Lloyd's Policy"). (Dkt. No. 34 ¶ 11.) American Zurich also issued workers' compensation and employer's liability to Skanska. (Dkt. No. 34 ¶ 14.)

The Zurich American Policy includes a standard Employer's Liability exclusion and an "insured contract" carveout to the exclusion, which covers any liability for damages that the insured assumed in a contract. (Dkt. No. 35-7 at 31.) The Lloyd's Policy follows form to the lead underlying policy, which is the Zurich American Policy. (Dkt. No. 34 ¶¶ 19–20.)

On January 21, 2018, Quentin Mayo, a Skanska employee, was working at the LGA Project when he was injured. (*See* Dkt. No. 34 ¶¶ 23–24.) As a result, he filed a lawsuit against Port Authority and LGA. *See Mayo v. Port Authority of N.Y. & N.J.*, Index No. 25429/2018E ("Underlying Action"). (*See* Dkt. No. 34 ¶ 25.) Port Authority and LGA then requested coverage under the Zurich American Policy, which Zurich American agreed to provide. (*See* Dkt. No. 34 ¶ 29.)

Fabiani Cohen & Hall ("FCH") was hired as defense counsel for LGA and Port Authority in the Underlying Action. (*See* Dkt. No. 34 ¶ 31.) In March 2021, Lloyd's emailed FCH and asked why it had not instituted a third-party action against Skanska for common law indemnity because Mayo was employed by Skanska. (*See* Dkt. No. 34 ¶ 34.) Following discussions among

3

Lloyd's, Zurich, and FCH, Zurich American filed this suit for declaratory judgment. (*See* Dkt. No. 1.)

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The Court must view all "evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks and citations omitted).

## III. Discussion

Zurich seeks a declaratory judgment from this Court that any claim potentially brought by Lloyd's against Skanska for common law indemnification or contribution is barred by the anti-subrogation doctrine of New York.

The sole issue before the Court is whether the anti-subrogation rule bars Lloyd's from causing its insureds, LGA and Port Authority, to sue its other named insured, Skanska, for common law indemnification or contribution.

Under New York law, the anti-subrogation rule provides that that "[a]n insurer… has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." *N. Star Reins. Corp. v. Continental Ins. Co*, 82 N.Y.2d 281, 294 (1993). The rule was established both to prevent the insurer from passing along a loss to its own insured and to diminish the possibility of a conflict of interest between the insurer and insured that may otherwise affect the insurer's incentive to provide a defense for the insured. *Id.* at 294. "The purpose of the [anti-subrogation] rule . . . is to prevent an insurer who provides coverage to *both* sides of a third-party action from recouping from one insured—the third-party defendant—the payment it makes on behalf of another insured—the third-party plaintiff." *Fitch v. Turner Constr. Co.*, 241 A.D.2d 166, 171 (N.Y. 1st Dep't 1998). The "essential elements" of the rule are that "the party which seeks to subrogate is covered by the relevant insurance policy." *Millennium Holdings LLC v. Glidden Co.*, 27 N.Y.3d 406, 415 (2016) (internal quotation marks omitted).

The Court agrees with Zurich that the anti-subrogation rule applies here because the two essential elements are met. First, Lloyd's is seeking to subrogate against its named insured, Skanska. And second, the risk of injury to Skanska employees is covered by the Lloyd's Policy. The Lloyd's Policy provides for an Employer's Liability exclusion and an insured contract carveout, meaning that any contractual indemnity claim asserted by LGA or Port Authority against Skanska is covered. (Dkt. No. 35-7 at 31.)

5

Lloyd's attempts to muddy the water of this straightforward case by relying on the *viability* of a hypothetical indemnity claim brought by LGA or Port Authority against Skanska. In essence, Lloyd's argument reduces to its interpretation of the Contract. It concedes that there is a contractual indemnity clause in the Contract (Section 21.1A) and that the Lloyd's Policy would theoretically provide coverage if LGA or Port Authority sought indemnification from Skanska. However, Lloyd argues, Section 21.4 of the Contract renders Section 21.1A of the Contract essentially nonexistent until there is direct exposure incurred by the Port Authority or LGA. But because LGA and Port Authority are protected by up to $300 million in insurance coverage, and there is no suggestion that the Underlying Action will need to be resolved for more than $300 million, LGA and Port Authority will never have a viable claim for indemnification against Skanska. In sum, "while the theoretical possibility exists for a contractual indemnity claim under . . . Article 21.1A(a), in practice its application is blunted by the paragraphs which immediately follow." (Dkt. No. 46 at 23.) Thus, Lloyd's contends, a claim for indemnification or contribution against Skanska is not a covered risk and if there is no viable claim, there is no conflict of interest for which the anti-subrogation rule is meant to guard against.

Lloyd's bases this argument on two prior court decisions. First, in *North Star Reinsurance Corporation v. Continental Insurance Company*, the New York Court of Appeals concluded that where there is no coverage under the insurance policy for either common law or contractual indemnity, the anti-subrogation rule does not apply. 82 N.Y.2d 281 (1993). And second, in *Pfizer, Inc. v. Stryker Corp.*, a judge of this court concluded that because the parties had expressly precluded indemnification against liability up to a certain amount, a claim for indemnification would not accrue until the indemnified party had made a payment or actually

suffered a loss. *See* 348 F. Supp. 2d 131, 151 (S.D.N.Y. 2004). Both cases, however, are distinguishable.

In *North Star*, the court considered whether the anti-subrogation rule applied where the policy barred coverage at the claim at issue. 82 N.Y.2d at 296. The contract had explicitly excluded coverage for "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury." *North Star Reins. Corp. v. Continental Ins. Co*, 185 A.D.2d 187, 188 (N.Y. 1st Dep't 1992). The Appellate Division concluded that the only claim against its insured lay in indemnification, a claim excluded from Continental's coverage. *Id.* at 188. The Court of Appeals confirmed that "because exclusions in [Continental's policy] rendered that policy inapplicable to the loss, the antisubrogation rule does not apply." *North Star*, 82 N.Y.2d at 296. But there, the insurance policy explicitly excluded coverage for the claim at issue. Here, there is no doubt that the Lloyd's Policy covers claims of indemnification against Skanska. Whether LGA and Port Authority will ever need to bring a claim of indemnification against Skanska is of no matter.

On this point, the Court finds the decision in *ACE American Insurance Company v. American Guarantee & Liability Insurance Company*, 257 F. Supp. 3d 596 (S.D.N.Y. 2017), instructive. There, ACE American Insurance Company and American Guarantee & Liability Insurance Company were in a dispute over which insurance company was responsible for funding a $5 million share of a settlement for a personal injury lawsuit. *Id.* at 598. ACE had issued workers' compensation and employers' liability policy to a company called Wager Contracting, while American Guarantee had issued to it a commercial umbrella liability policy. *Id.* at 599. American Guarantee sought to bring an indemnity claim as the subrogee of one of its

7

insureds against another one of its insureds. *Id.* at 601. But the court concluded that the anti-subrogation rule prohibited American Guarantee from bringing such a claim. *Id.* at 602.

One of American Guarantee's core arguments was that because its policy was excess to ACE's policy covering Wager Contracting, and because ACE's policy was unlimited for the injury at issue, American Guarantee's excess layer would never be reached. *Id.* The court explained, however, that it was "a mistake to focus solely on coverage priority as to Wager Contracting, because American Guarantee can only reach that entity . . . through an indemnity claim on behalf one insured . . . against another insured, Wager Contracting—which is the exact route blocked by the antisubrogation rule." *Id.* at 602–03. The court also rejected American Guarantee's argument that if there is no conflict of interest, the anti-subrogation rule does not apply — the exact argument made by Lloyd's here. *See id.* at 604 ("Indeed, the New York Court of Appeals has applied the antisubrogation doctrine to excess and primary insurers alike without noting whether either insurer controlled the underlying litigation or was otherwise at risk of having a conflict of interest with a policyholder.") Thus, even assuming that there is no conflict of interest here, the anti-subrogation rule still applies.

In *Pfizer*, the court concluded that the indemnity clause at issue was an agreement to indemnify against *loss*, and therefore, indemnification was not a viable option until the party seeking indemnification had suffered a loss greater than the threshold amount established in the contract. *Pfizer*, 348 F. Supp. 2.d at 151. The indemnity clause here, however, has no threshold amount, but only precludes LGA and Port Authority from seeking indemnification *after* they have recovered from the insurer, and requires only that LGA and Port Authority reimburse Skanska for any amount covered by insurance. (Dkt. No. 35-1 at 236.) Furthermore, Section 21.1 requires Skanska to indemnify LGA and Port Authority for any liability for "Losses" due to

Skanska's negligence or omission, and defines "Losses" to mean "any loss, damage, injury, liability, obligation . . . incurred in connection with the enforcement of any provision of the [Contract]." (Dkt. No. 35-1 at 46.) Unlike the indemnity clause in *Pfizer*, therefore, the indemnity clause at issue here is an agreement to indemnify against liability. And importantly, "[a] right to indemnification against liability . . . arises when the party faces a fixed liability, even though it has not paid the claim and thus suffered no damage." *Pfizer*, 348 F. Supp. 2d at 151. Contrary to the situation in *Pfizer*, LGA and Port Authority's right to indemnification attaches as soon as their liability is fixed.

### IV.  Conclusion

For the foregoing reasons, Zurich's motion for summary judgment is GRANTED. The Court declares, as a matter of New York law, that the anti-subrogation rule precludes Lloyd's from commencing a claim for common law indemnification or contribution against Skanska. The Clerk shall enter final judgment accordingly.

The Clerk of Court is directed to close the motion at Docket Number 32 and to close this case.

SO ORDERED.

Dated: September 12, 2022
       New York, New York

_____
J. PAUL OETKEN
United States District Judge